IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

MEDICAL MUTUAL INSURANCE    )
COMPANY OF NORTH CAROLINA,    )
    )
    Plaintiff,    )
    )
v.    )    Civil Action No. 3:20-cv-822–HEH
    )
REBECCA ALEJANDRINO    )
LITTAUA, M.D., *et. al*,    )
    )
    Defendants.    )

## MEMORANDUM OPINION
### (Granting Defendant Kyung Chun Yeon's Motion to Dismiss)

The case presently before the Court evolves from a medical malpractice lawsuit

currently pending in the Circuit Court of the City of Petersburg, Virginia.  Rebecca

Alejandrino Littaua, M.D. ("Dr. Littaua") and her medical practice, Tri-Cities Infectious

Disease Associates, P.C. ("Tri-Cities") ,are defendants in that case.  Dr. Littaua was the

treating physician of Ki Hoon Yeon (the "Decedent"), whose estate is the plaintiff in the

Petersburg case.  Medical Mutual Insurance Company of North Carolina ("Med Mutual")

is Dr. Littaua and Tri-Cities' insurance carrier and is seeking a declaratory judgment from

this Court that it has no obligation to provide insurance coverage for the defense of the

case in Petersburg.  In seeking a declaratory judgment, Med Mutual contends that Dr.

Littaua modified or altered the Decedent's medical records in violation of the specific

conditions of coverage under the policy at issue.  Presently before the Court is Defendant

Kyung Chun Yeon's, the Administrator of the Decedent's Estate, Motion to Dismiss

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 8).  The parties have filed memorandum in support of their respective positions and the Court heard oral argument on February 4, 2021.  For the following reasons, the Court will grant the Motion to Dismiss.

The provision of the Medical Professional Liability Policy No. PS112774 (the "Policy") relied upon by Med Mutual is captioned "Insured's Duties" and reads in pertinent part: "[the insured cannot,] with regard to any **Claim** or **Medical Incident**, attempt to or actually destroy, alter, modify, or delete any evidence, or potential evidence, relating to any patient care information, data, records, or films, whether existing in paper or any electronic format, regardless of where and how stored." (Compl. Ex. B at § IV(e), ECF No. 1-2 (emphasis in original).)  Based on Section IV(e) of the Policy, Plaintiff contends any alteration of medical records warrants a denial of coverage irrespective of relevance.[1]

The sole specific allegation in the Complaint supporting denial of insurance coverage is skeletal at best.  Med Mutual contends that, "[i]n January 2019, Dr. Littaua made changes in her patient chart for [the Decedent], including certain substantive and material alterations, modifications, and deletions thereto." (Compl. ¶ 11.) Conspicuously absent from the Complaint is any specific allegation as to the nature of the change, why it was made, and what, if any, effect it had on the accuracy or completeness

---

[1] The parties dispute whether noncompliance with Section IV(e) of the Policy is a condition precedent arguably precluding coverage for litigation expenses or simply a breach of the insurance contract.  The dispute requires a more in-depth analysis than the present record would permit, but this Court need not reach that issue at this stage of the proceedings.

of the Decedent's chart.  Furthermore, there was no allegation in the Complaint that the added or deleted information was inaccurate or irrelevant.

The operative language in Section IV(e) is "any evidence, or potential evidence, relating to . . . patient care."  This determination cannot be made in the abstract.  Whether or not an alteration of the Decedent's medical records affected their evidentiary value is an issue best determined by the trial court in the context of the evidence.  Any assessment of the weight to be given to the alleged alteration is not a question of law, but one of context-specific fact.  A decision by this Court based on a lean record could foreclose further review and possibly hinder critical fact finding by the trial court.

This action was brought under the Declaratory Judgment Act, which grants a district court ample discretion to issue a declaratory judgment.  28 U.S.C. § 2201.  As the United States Court of Appeals for the Fourth Circuit has counseled, federal courts should exercise their discretionary jurisdiction with caution.  *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 201 (4th Cir. 2019).  As the court noted in *Trustgard*, "a district court, in 'a case of actual controversy within its jurisdiction . . . *may declare* the rights and other legal relations of any interested party seeking such declaration.'  This act gives federal courts discretion to decide whether to declare the rights of litigants."  *Id.* (quoting § 2201(a)) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

To guide district courts when exercising jurisdiction in declaratory judgment actions involving ongoing state court proceedings, the Fourth Circuit underscored several factors that warrant consideration: first, the state's interest in having its own courts decide the issue; second, the state court's ability to resolve the issues more efficiently than the

3

federal courts, particularly in the context of the evidence presented; third, the potential

for unnecessary entanglement between the state and federal courts based on overlapping

issues of fact or law; and fourth, whether the action is a result of forum shopping. *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004). Courts should also

consider any potentially preclusive consequences that its decision might have on state

court proceedings. *Trustgard Ins. Co.*, 942 F.3d at 202 (citing *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994)).

Here, the factors weigh in favor of this Court staying its hand. Virginia courts are

well-positioned to decide matters regarding medical malpractice actions brought under

Virginia law, and the Circuit Court for the City of Petersburg can more efficiently weigh

the evidentiary value of the alleged alteration, if any, as the underlying facts unfurl at

trial. Resolving the question of whether Dr. Littaua's alteration was material could

possibly affect the trial court's ability to resolve the underlying claim. A preemptive

decision by this Court invites the type of "unnecessary entanglement between state and

federal courts" discouraged by the Fourth Circuit in *Nautilus*. 15 F.3d at 376–77

(explaining that a court must take into account "considerations of federalism, efficiency,

and comity . . . [to] inform a federal court's discretionary decision whether to abstain

from exercising jurisdiction over state-law claims in the face of parallel litigation.").

This Court will therefore decline to exercise jurisdiction under the Declaratory Judgment

Act. 28 U.S.C. § 2201(a). Accordingly, this case will be dismissed without prejudice.

4

5

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: Feb. 17, 2021
Richmond, Virginia

5